UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA HUNTER,	Case No. 17-10314

    Plaintiff	Stephanie Dawkins Davis
v.	United State Magistrate Judge

GENERAL MOTORS LLC,

    Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR RECONSIDERATION (Dkt. 36)**

    A.    <u>Procedural History</u>

Plaintiff, Cynthia Hunter, filed a complaint in state court for race and sex discrimination under the Michigan Elliott-Larsen Civil Rights Act and Title VII and for retaliation under Elliott-Larsen on December 22, 2016. (Dkt. 1, Notice of Removal, Pg ID 8-23). Defendant, General Motors LLC, removed the action to federal court on February 1, 2017. (Dkt. 1). On January 3, 2018, the parties executed a consent for reference of this matter to the undersigned magistrate judge. (Dkt. 20). On January 5, 2018, District Judge Robert H. Cleland signed the consent and referred this matter under 28 U.S.C. § 636(c). (Dkt. 21). After briefing and a hearing, on March 31, 2019, the Court granted GM's motion for summary judgment and entered judgment in its favor the following day. (Dkt. 33, 35). Hunter filed a timely motion for reconsideration on April 14, 2019. (Dkt. 36).

1

B. Legal Standard

Local Rule 7.1(g)(3) governs motions for reconsideration and provides as follows:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. L.R. 7.1(g)(3). A palpable defect is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006). Similarly, relief is available under Fed. R. Civ. P. 60(b)(1), "when the judge has made a substantive mistake of law or fact in the final judgment or order. *Penney v. United States*, 870 F.3d 459, 461 (6th Cir. 2017), quoting *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002).[1]

C. Analysis and Conclusion

Hunter raises several claims of error, each of which will be addressed, in turn, below.

---

[1] While plaintiff mentions Fed.R.Civ.P. 60(b)(1) in the title of her motion and recites the standard, her argument appears to be focused on the "palpable defect" standard found in Local Rule 7.1. Accordingly, the Court's analysis is focused on this standard.

2

1. *Prima facie* case under the Elliott-Larsen Civil Rights Act

Hunter maintains that the four-part test relied on by the Court, and as advocated by GM, for establishing a *prima facie* case of sex discrimination does not apply to her claim for sex discrimination under the Elliott-Larsen Civil Rights Act. That test, which applies when a plaintiff does not provide direct evidence of discrimination under Title VII, requires a plaintiff to show that: (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) that the job was given to a person outside the protected class or that she was treated differently than a similarly situated, non-protected employee. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2007) *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 501-02 (6th Cir. 2007); *Lyons v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 416 Fed. Appx. 483 (6th Cir. 2011). Rather, Hunter maintains that, under state law, the fourth element merely requires a plaintiff to show that "(4) she was discharged under circumstances that give rise to an inference of unlawful discrimination." *Lytle v. Malady*, 458 Mich. 153, 173 (1998).

Hunter overstates the differences between the state and federal standards. In *Lytle*, as the Michigan Supreme Court itself observed, its four-part test was simply an adaptation of the *McDonnell-Douglas* framework. *Id*. n. 19. Notably, *Lytle*

cites to *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 695 (1997) for the elements and the *Town* court stated:

> [m]any courts, including this one, have used the prima facie test articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* as a framework for evaluating age-discrimination claims. Originally applied to cases of race discrimination, the test has been modified to accommodate cases of age and sex discrimination.
>
> The modified *McDonnell Douglas prima facie* approach requires an employee to show that the employee was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct.

*Id*. (footnotes omitted). Michigan courts have treated the fourth prong of the *prima facie* case under Elliott-Larsen the same as federal courts do for purposes of Title VII, requiring plaintiffs to provide evidence of appropriate comparators. *See e.g.*, *Coleman-Nichols v. Tixon Corp*., 203 Mich. App. 645, 651 (1994) (Under the disparate treatment theory, a plaintiff must show that she was a member of a protected class, and that, for the same or similar conduct, she was treated differently than a man.). Moreover, Hunter does not explain how the language from *Lytle* would change the Court's analysis or the result. As explained in detail below, Hunter still does not provide sufficient evidence of appropriate comparators. Thus, the language of *Lytle* does not change the Court's analysis of

her sex discrimination claim under state law. Accordingly, the Court finds no palpable error in this regard.

2. Alleged errors regarding comparators.

Hunter complains that the Court adopted an "overly rigid" analysis regarding similarly situated comparators. Hunter correctly points out that under state and federal law, a plaintiff need not "demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly situated." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 654 (6th Cir. 2012). Hunter maintains that the Court committed palpable error by concluding that she did not provide evidence of similarly situated men who were treated differently than she was. According to Hunter, her team consisted of five men and two women, all of whom were similarly situated because they all had the same supervisor, have been subject to the same standards, and have engaged in the same conduct without mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Hunter says, without any citation to the record in support of her claim, that all the men "had similar if not identical disciplinary records." (Dkt. 36, p. 9). Importantly, the record is devoid of evidence of the disciplinary record of anyone other than Hunter. The <u>only</u> similar act by the men on her mainframe team that

Hunter identifies is the mainframe data deletion incident. As the Court pointed out in its March 31 Opinion and Order, the record in this case does not show that the men who received no discipline for the data deletion incident had a similar disciplinary history to hers. (Dkt. 33, p. 22); s*ee e.g.*, *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 562 (6th Cir. 2004) ("Because none of the employees cited allegedly engaged in the range of activities for which [plaintiff] was disciplined, no employee is similarly situated."); *Haughton v. Orchid Automation*, 206 Fed. Appx. 524, 534 (6th Cir. 2006) (finding that plaintiff did not engage in substantially similar conduct with proposed comparator when "only some of their conduct was similar"). As such, the Court finds no palpable error in rejecting the male members of Hunter's team as appropriate comparators because there is no evidence in this record that those male team members engaged in the same conduct *without mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. Ercegovich*, F.3d. at 352. Hunter, as plaintiff, bears the burden of proving her *prima facie* case and she has not done so.

Hunter also asserts that the Court did not appropriately assess Jorge Diaz as a possible comparator. According to Hunter, a jury could have decided that Diaz was totally at fault for the incident leading to her being disciplined. This argument misses the mark. The question is whether Hunter offers evidence establishing a

6

genuine issue of material fact that she was treated differently from Diaz for the same or similar conduct. However, Hunter offers no evidence that Diaz did not receive discipline for the incident or that he had a similar disciplinary history to Hunter at the time of the incident. (Dkt. 33, pp. 22-23). Again, Hunter has not provided enough information to the Court for it determine that Diaz is an appropriate comparator. For this reason, Diaz does not help Hunter establish her *prima facie* case. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) (While a proposed comparator "need not be identical [to the plaintiff] in every way," the plaintiff "must show that the comparator is similarly situated in all relevant aspects and has engaged in acts of comparable seriousness," but was disciplined differently.).

Next Hunter contends that the Court improperly used her supervisor and a contract employee as comparators. However, the Court did not use either as comparators in this case. In addressing whether her male team members were proper comparators as to the data loss incident, the Court recited the facts regarding who was disciplined as a result, which included Hunter's supervisor and a contract worker. (Dkt. 33, p. 22). The Court simply went on to conclude that Hunter's male team members were not established to be appropriate comparators, as discussed above. Accordingly, there is no palpable error.

7

### 3. Direct evidence of sex discrimination

Despite not arguing that she was asserting her claim under a direct evidence theory in her response to the motion for summary judgment, Hunter now claims that she provided sufficient direct evidence to satisfy her *prima facie* burden. "In employment discrimination claims, 'direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Flagg v. Staples the Office Superstore East, Inc.*, 138 F.Supp.3d 908 (N.D. Ohio 2015) (quoting *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000). "Direct evidence proves the existence of a fact without any inferences or presumptions. To establish 'direct evidence' of discrimination through a supervisor's comments made in the workplace, the remarks must be 'clear, pertinent, and directly related to decision-making personnel or processes.'" *Id*. Although "[d]iscriminatory remarks by decision makers...can constitute direct evidence of discrimination," only "'the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [gender],' satisfy this criteria [sic]." *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (citations omitted). If a plaintiff produces direct evidence of discrimination, she need not satisfy the four-part test for establishing a *prima facie* case using indirect evidence. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

8

Here, Hunter says she has provided the following direct evidence of discrimination: (1) in mid-2014, Rurka began treating her and the other woman on the team differently by not letting them work from home and by calling the men "rockstars" and referring to the woman as "lazy" and "sloppy"; (2) Rurka ignored women on the team, talked down to them, and walked away when they were speaking; and (3) Rurka did not listen to Hunter when she told him how to handle the mainframe data storage issue. (Dkt. 36, pp. 14-15). The evidence cited by Hunter is not, however, direct evidence. She does not allege that Rurka directly stated that "*men* are rockstars" or that "*women* are lazy and sloppy." She does not allege that Rurka said that "only *men* may work from home." Rather, all the evidence cited requires one to infer that Rurka views or treats men more favorably than women based on comments directed to each group and treatment of persons in each group. Accordingly, the evidence cited above does not qualify as direct evidence and Hunter has not shown any palpable error in this regard.[2]

4. Hostile Work Environment

Hunter argues that the Court committed palpable error by looking at each incident of harassment as disconnected from all the other evidence of

---

[2] Hunter says that her evidence of comparators also supports her pretext argument. However, as discussed in the March 31 Opinion and Order, the Court did not reach of the issue of pretext because it concluded that she did not establish a *prima facie* case. The Court finds no basis to depart from this conclusion and there is no palpable error on this issue.

9

discrimination. In other words, Hunter claims that the Court did not consider the totality of the circumstances in evaluating her hostile work environment claim. Turning to the Court's March 31 Opinion and Order, all allegations of harassment and hostile work environment were fully examined under both the severity and pervasiveness prongs of the test for hostile work environment. (Dkt. 33, pp. 27-31). Recognizing there is no magic number of incidents that must occur within a certain period, the Court's evaluation proceeded within a framework acknowledging that the severity prong calls upon the court to consider the cumulative effect of multiple incidents. And, the pervasiveness prong, as the name suggests, requires the court to consider the prevalence and extent of the offending conduct, which necessarily entails evaluating the alleged actions taken together – or in their totality. In listing each of the component parts of the alleged hostile work environment, the Court did not neglect to consider them collectively. Rather, it considered the evidence as to each component and appraised them taken together as a whole. Thus, the Court finds no palpable error.

     5.     Retaliation

Hunter contends that the Court was misled into believing that it was Jesse Bruner (the Mainframe Storage Director), a woman, who made the decision to terminate her and a woman, Sharon Ridgell (a consultant in GM's Policy Department), who approved the termination. (Dkt. 33, p. 35). However, at his

10

deposition, Rurka testified that it was he and his boss, Bruner, who made the decision to terminate Hunter.  (Dkt. 27, Ex. E; Rurka Deposition at p. 71).  There is no question that Rurka participated in the decision to terminate Hunter, as explained in detail in the March 31 Opinion and Order.  (Dkt. 33, p. 35).  More specifically, Rurka concluded that Hunter could not perform her job duties satisfactorily.  (Dkt. 25-7, Rurka Dec. ¶ 24).  Rurka and HR Business Partner Michael Andrzejewski conferred and recommended to Bruner that Hunter's repeated carelessness and disregard of procedures warranted termination.  (Dkt. 25-6, Andrzejewski Dec. ¶ 13).  Bruner agreed.  (Dkt. 25-6, Andrzejewski Dec. ¶ 13).  Andrzejewski presented the facts to Ridgell.  Ridgell agreed that termination was appropriate.  (Dkt. 25-6, Andrzejewski Dec. ¶ 14).  GM then terminated Hunter's employment on February 18, 2016.  (Dkt. 25-1, pp. 100, 172; Plf. Dep. Ex. 18; Dkt. 25-6, Andrzejewski Dec. ¶ 15).

    The Court fully considered Rurka's involvement in the decision to terminate her.  As noted previously, the record shows performance issues long before Hunter complained of discrimination.  Further, the evidence shows that Bruner, who notably had personally participated in the investigation into the September 2014 tape deletion incident, desired plaintiff's termination well before it occurred and Rurka and Andrzejewski were the ones who had successfully lobbied for her retention.  In addition, Hunter does not contend that the mistakes she made in

November 2015 or February 2016, after the last chance agreement was implemented, were not based in fact, or that she was blamed for the actions of others on these occasions. Accordingly, the Court finds no palpable error in its prior conclusion that Hunter relies solely on the temporal proximity of her termination to her complaint and that her retaliation claim fails because that temporal proximity is insufficient to establish causation.

For the reasons set forth above, the Court **DENIES** plaintiff's motion for reconsideration.

**IT IS SO ORDERED**.

Date: July 16, 2019                              s/Stephanie Dawkins Davis
                                                 Stephanie Dawkins Davis
                                                 United States Magistrate Judge